

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Hon. Otto Brittain
County Auditor
Angelina County
Lufkin, Texas

Dear Sir:

Opinion No. O-7165

Re: Payment of County Health Officer
for visiting and treating patients
in the County Hospital of Angelina
County

We are in receipt of your letter of recent date requesting the opinion of this department on the above stated matter. We quote from your letter as follows:

"Under Article No. 4427, Duties of County Health Officer; we find that the County Health Officer is charged with the duty of attending inmates of hospitals, among other things, as required by the Commissioners' Court:

"Under Article 4480, which deals with the powers of the board for County Hospitals, we find in the second paragraph of this article this language, 'The board shall also appoint a staff of visiting physicians who shall serve without pay from the county, and who shall visit and treat hospital patients at the request either of the managers or of the superintendent.'

"This service is required of the physician I understand because of the fact that the County furnishes the building and equipment for the practice of their profession without charge.

"Here before the hospital board of the Angelina County Hospital has appointed a visiting board of Physicians under Article 4480, who has rendered the services required under the above article. Recently this board has been discontinued and this service is being taken care of by the County Health Officer who expects pay from the general fund for this service. The County Health Officer being the President of the Angelina County Hospital Board also.

Hon. Otto Brittain - Page 2

"It is our opinion that Article 4427 applies to Counties without a County Hospital, and that Article 4480 would apply in this case.

"Will you please advise us as to the correctness of our opinion, or the in-correctness. And if we are incorrect then advise what the language in Article 4480 applies to and when."

In response to our request for further information with reference to the above mentioned matters, you submitted the following information:

"You ask what types of patients the County Health Officer attends at the Hospital. The patients that go to the Hospital that are able to pay are classed as pay patients; those that are not able to pay for their services are classed as Charity patients. It is the patients that are not able to pay, or Charity patients, that require the services of the Charity Board or the County Health Officer.

"The Commissioners' Court sometimes recommends that a patient be admitted to the Hospital as Charity patient, but to be cared for by the rules of the governing board of the Hospital which are set out as by-laws which the law requires. But not near all the Charity patients that enter the hospital are sent or recommended by the Commissioners' Court."

With reference to the duties of a County Health Officer, we call your attention to the following provisions of Article 4427, V.A. C.S.:

"Each County Health Officer shall perform such duties as have been required of county physicians, with relation to caring for the prisoners in county jails and in caring for the inmates of county poor farms, hospitals, discharging duties of county quarantine and other such duties as may be lawfully required of the county physician by the commissioners court and other officers of the county, and shall discharge any additional duties which it may be proper for county authorities under the present laws to require of county physicians; and, in addition thereto, he shall discharge such duties as shall be prescribed for him under the rules, regulations and requirements of the Texas State Board of Health, or the president thereof, and is empowered and authorized to establish, maintain and enforce quarantine within his county. He shall also be required to aid and

Hon. Otto Brittain - Page 3

assist the State Board of Health in all matters of local quarantine, inspection, disease prevention and suppression, vital and mortuary statistics and general sanitation within his county; and he shall at all times report to said State board, in such manner and form as it shall prescribe, the presence of all contagious, infectious and dangerous epidemic diseases within his jurisdiction; and he shall make such other and further reports in such manner and form and at such times as said State board shall direct; touching on such matters as may be proper for said State board to direct; and he shall aid said State board at all times in the enforcement of its proper rules, regulations, requirements and ordinances and in the enforcement of all sanitary laws and quarantine regulations within his jurisdiction."

As to the duties required of the "County Physician" referred to in the above quoted provision, we call your attention to the following language contained in H. B. 623, Ch. 118, General Laws of Texas, 22nd Leg., 1891:

"An act to regulate the establishment of quarantines in the State of Texas, and in the counties, cities and towns thereof, and to repeal all laws and parts of laws in conflict therewith.

"Section 1. Be it enacted by the Legislature of the State of Texas: That the Governor is empowered to issue his proclamation declaring quarantine on the coast or elsewhere within this State, whenever in his judgment quarantine may become necessary, and such quarantine may continue for any length of time as in the judgment of the Governor, the safety and security of the people may require.

". . . . . .

"Section 14. It shall be the duty of every County Judge within the State of Texas, after each general election of State and county officers, or as soon thereafter as practicable, to select from the physicians of the respective counties, one of high character and recognized ability, who shall be known as 'County physician.'. It shall be the duty of said county physician to establish, maintain and enforce local quarantine for his county whenever declared by proclamation of Commissioners court; to furnish supplies, select medical assistants, guards and perform all other duties coincident to a reasonable, economic and consistent quarantine. The salary of county physicians must be agreed to and be paid by their respective counties, but the county physician shall receive

no salary except when quarantine has been established
and he is actually engaged in such services. County
physicians shall in all quarantines establish rules
in harmony and accord with the rules prescribed by the
State health officer; shall respect and obey instructions
from said officer and make written reports to him of their
official acts, whenever required to do so, giving cause
and history of epidemic, number of deaths and recoveries,
and all other facts of scientific value.

"Section 15. Whenever the Commissioners court of
any county has reason to believe that they are threatened
at any point or place within or without the county limits
with the introduction or dissemination of a dangerous,
contagious or infectious disease that can and shall be
guarded against by quarantine, direct their county physi-
cian to declare and maintain said quarantine against any and
all such dangerous diseases; to establish, maintain and sup-
ply stations or camps for those held in quarantine; to pro-
vide hospitals, tents, or pest houses for those sick of
contagious and infectious disease; to furnish provisions,
medicine and all other things absolutely essential for the
comfort of the well and the convalescence of the sick. The
county physician shall keep an itemized account of all law-
ful expenses, incurred by local quarantine, and his county
shall assume and pay them as other claims against the
county are paid. Chartered cities and towns are embraced
within the purview of this article, and the mere fact of in-
corporation does not exclude them from the protection against
epidemic diseases given by the Commissioners court to other
parts of their respective counties. The medical officers of
chartered cities and towns can perform the duties granted or
commanded in their several charters, but must, (if the county
physician is not, as is frequently the case, the city physi-
cian, also,) be amenable and obedient to rules prescribed by
the State health officer. This article, however, must not be
construed as prohibiting any incorporated town or city from
declaring, maintaining and paying for a local quarantine.

". . . . .

"Section 19. There being no law upon the subject of
quarantine adequate to the protection of public health, and
the near approach of the season of the year when quarantine
will have to be declared, a public necessity and an emergency
exists, requiring the suspension of the constitutional rule
requiring bills to be read on three several days, and that
this act take effect and be in force from and after its pas-
sage, and it is so enacted." (underscoring ours)

The above quoted provision constitutes a portion of the law enacted in 1891 upon the subject of quarantines as well as the applicable provisions with reference to the appointment and the duties of a County Physician. It is manifest that the above quoted provisions with reference to "hospitals" contemplated such "hospitals, tents or pest houses" that were to be provided in connection with the establishment of quarantines. We note further that the above mentioned provisions were enacted prior to the enactment of the statutes dealing with the subject of "county hospitals" now contained in Chapter 5, Title 71, Articles 4478-4491, V.A.C.S.

With reference to the compensation of the County Health Officer who is required by law to perform the duties prescribed by Article 4427, we call your attention to the following language contained in Article 4423:

"Compensation of said county health officer shall be fixed by the Commissioners' Court; provided that no compensation or salary shall be allowed except for services actually rendered."

Chapter 5, Title 71 which includes Articles 4478-44941, V.A.C.S., contains the various provisions with reference to the subject of County Hospitals. We call your attention in particular to the following provision contained in Article 4480.

"The board shall also appoint a staff of visiting physicians who shall serve without pay from the county, and who shall visit and treat hospital patients at the request either of the managers or of the superintendent."

We further call your attention to the provisions of Article 4489:

"Wherever a county hospital for the care and treatment of persons suffering from any illness, disease or injury exists in connection with, or on the grounds of a county poorhouse or elsewhere, the commissioners' court shall appoint a board of managers for such hospital, and such hospital and its board of managers shall thereafter be subject to each provision of this law, in like manner as if it had been originally established hereunder. Any hospital which may hereafter be established by any commissioners' court shall in like manner be subject to each provision of this law." (Underscoring ours)

In view of the various provisions of the statutes dealing with County Hospitals, and in view of the above underlined language, it is apparent that H.B. 355, Ch. 39, Acts of the Regular Session of the 32nd Legislature, 1913 (now Articles 4478-4494) was intended to

Hon. Otto Brittain - Page 6

embrace all the law upon the subject of county hospitals. We note here that Article 4427, which contains certain provisions with reference to the County Health Officer's caring for patients in "hospitals" provided by the county (in connection with quarantines) was derived from the Acts of the 1st Called Session of the 31st Legislature, 1909, p. 340. In 39 Texas Jurisprudence, "Statutes", ec. 80, p. 148, it is stated:

> "Where it is apparent that a statute is intended to embrace all the law upon the subject with which it deals, it repeals all former laws relating to the same subject."

In view of the foregoing, it is our opinion that those provisions contained in Article 4480 with reference to the visiting and treating of patients in any hospital established by the County, supercedes that portion of Article 4427 which provided that the County Health Officer should care for patients in hospitals provided by the County and which authorized the Commissioners' Court to compensate him therefor.

You stated in your letter that the staff of visiting physicians which had been appointed under the provisions of Article 4480 was no longer functioning and that the services formerly performed by said staff of visiting physicians was now performed by the County Health Officer, who expects to receive pay from the county for such services. We note that under the provisions of Article 4480, the board of managers is required to appoint a staff of visiting physicians "who <u>shall</u> visit and treat hospital patients at the request of either the managers or the superintendent." We note further that such staff of visiting physicians "<u>shall serve without pay from the county.</u>" Moreover, we find no provision authorizing the expenditure of county funds for the services of a doctor who visits and treats such patients who have been admitted to the county hospital, even though the staff of visiting physicians above referred to no longer functions.

After carefully considering the various statutory provisions with reference to county hospitals and with reference to duties of the County Health Officer in a county having a hospital established by the county and in view of the facts given, it is our opinion that the visiting and treating of patients who have been admitted to the county hospital is governed by the above quoted provisions of Article 4480 and that Article 4427 has no application to the situation. It is therefore our opinion that when a county has established a county hospital, the above mentioned services are not the character of services which constitute "official" duties of the County Health Officer. You are therefore advised that the Commissioners' Court of Angelina County is not authorized to allow the County Health Officer any compensation, in his official capacity or otherwise, for performing services in connection with the Angelina County Hospital which were formerly performed by the staff of visiting physicians.

Hon. Otto Brittain - Page 7


      We trust that the above and foregoing will satisfactorily answer your inquiry.

                        Yours very truly

                ATTORNEY GENERAL OF TEXAS

APPROVED APR 6 1946

ATTORNEY GENERAL OF TEXAS

                By              
                    J. A. Ellis
                    Assistant


JAE:djm

